Good morning your honors and may it please the court. Would somebody please close the back door. Alan Morritson on behalf of Walter Eddings I'm going to attempt to reserve a couple of minutes for rebuttal. I'm going to focus my argument on our contentions related to instruction number 13 and the problems with giving an investigative techniques instruction on these facts and these circumstances. So I'll first attempt to demonstrate that point and then say I'll make the argument that even if it was appropriate to give such an instruction that this instruction in particular when read in combination with the other instructions had the impermissible effect of reducing the government's burden of proof by suggesting to the jury that it was precluded from considering certain pieces of evidence and then time permitting I'd like to talk about harmless error. The government says that this is a classic case for an investigative techniques instruction but cites no authority and I've come across no authority in which such an instruction was used or approved where the investigative techniques and evidence from those investigative techniques was introduced as part of the government's case-in-chief. If you look at Trent, Cotamesa, Lemon, Johnson, these court's cases, Fourth Circuit in Dennis, Third Circuit in Gorney, in none of those cases did the government as part of its case-in-chief introduce evidence from the investigative techniques. I thought this instruction is used to say oh you didn't have to the government didn't have to do a fingerprint check or DNA check on the glass bag that contained the heroin things like that but in those cases there was always some investigative technique that was used to prove the case. Some investigative technique just not the challenge investigative technique not that not the investigative technique that the defense counsel was saying was missing from the case and so your honor you're exactly right these instructions came to fruition as a result of CSI funnily enough where there was concern that a juror or jury would have an unreasonable expectation about the government's ability to establish proof beyond a reasonable doubt by using all kinds of different forensic tools, ballistics tests, DNA, fingerprint and so the government would come in and attempt to prove its case whether it was based on eyewitness testimony or based on some kind of investigative technique and then the defense counsel would stand up and say well where's the DNA evidence? Where's the ballistics test? And here in contrast they did use photographs. That's exactly right. So that's the point you're making. That's the point I'm making and and there's there's two reasons it matters. One it only serves to confuse or mislead the jury because the instruction says certain investigative techniques or methods that were not used. Well the only criticism was to photographs and videos which were used and so what's the jury to think in that context about well what investigative techniques were not used? The other problem is that when the government... Let me stop you there. Yeah. But then the jury would say well I don't see what this has to do with anything because there's no challenge to any investigative techniques. So the instruction I guess we're getting to harmless error didn't hurt anything. Well not quite to harmless error but I think a related point which is when the government gets to use the fruits of an investigative technique as part of their case-in-chief to incriminate the defendant and then the defense counsel stands up and says well where's the direct evidence from those investigative techniques of the criminal activity and then the government gets to pull the court in to tell the jury hey they weren't obligated to fully employ those investigative techniques. They weren't obligated to take the picture defense counsel thought they should have taken. Then you have this imbalance in terms of putting a thumb on the scale in favor of the government. Are we on plain error review on this? No. Well... Thank you for your answer. Well I thought you wanted to follow up but I'm happy to explain why. Well in the district court as I see the records you made three arguments about this instruction and one of them relying on Trent. You you argue that it was inapplicable to the circumstances here because it didn't you weren't arguing it wasn't about whether it would reveal the true culprit of the crime. That's not what you're arguing now. Correct. Okay then you also argued that it was duplicative of pattern instruction 1.8 which addressed the jury's role to judge the credibility of the evidence. This argument's different than that. Well my second argument I would say is absolutely related to that. Okay but there was no argument that if I are if if the presents photographic evidence and my argument is to the jury is that's not complete because it misses the critical moment when he's moving the gun. That argument was not made to the district. Well the argument that was made in in your honor may be referring to some of the arguments in writing which were objecting to the instruction but then trial counsel followed up with arguments oral arguments where he elaborated on the objection. One thing he did talk about was that I didn't even have the chance to talk about DNA or fingerprint evidence which is where the investigative techniques instruction would apply and I think that that is you know part and parcel with the argument that the investigative techniques instruction has to focus on investigative techniques that were not introduced to the jury and and so that's why I'm arguing that it's not plain error. That it was preserved because he counsel talked about the fingerprint and DNA evidence. I wasn't allowed to talk about that and that's when the investigative techniques instruction might apply because the government didn't did not introduce any evidence of fingerprint. Can you point me to where in the record I would find these oral arguments that that raised the argument you're making now in the district court? I can on rebuttal if I if I'm successful in reserving two minutes for rebuttal or one minute for rebuttal. But you'd prefer for us not to be on plain error. I would absolutely prefer that we not be on plain error and even on well the next point I was going to make was even as to the misleading nature of the instructions. So I say this respectfully but but there's been kind of an odd development in this court's precedent. When we started with Coda Mesa and the investigative techniques instruction we added this precautionary language about yes the government doesn't have a duty to pursue every investigative technique but you jury are allowed to take into account those investigative deficiencies the whatever evidence you think should have been produced that was not in assessing witness credibility and in weighing whether the government met its burden of proof. That's the Coda Mesa instruction and then we have a series of unpublished decisions from this court, Trent aside, but but Trent really didn't deal with this this issue but we have those three unpublished decisions that drop that qualifying language and it's it's a problem and every other circuit to have addressed this question, the Second Circuit, the Third Circuit, the Fourth Circuit, they all focus on this qualifying language that makes it clear to the jury we're telling you the government doesn't have this duty but we also want to make sure you understand that you can take into account these shortcomings in your evaluation and and then and we don't have that here and so what we have is they don't have to do it immediately followed up by your job is to consider the evidence presented, right, which in my mind only reinforces the message to the jury that you should not consider what the government did not produce and the evidence they did not submit to you. Did defense counsel at trial argue these deficiencies in the techniques they did use? Well defense counsel argued and this was again more in the in the oral argument. I don't mean argue to the judge, I'm sorry, I meant arguing to the jury. I see. I apologize. No no my fault for misunderstanding. Argued what to the jury? Sorry, Your Honor. That the techniques that the officers did use were performed efficiently and that should raise questions about their credibility. He says this happened but he didn't take a picture of that, he took a picture of everything else, you know. It certainly was argued, yeah. And there was no ruling by the court that that was an improper argument or no argument by the prosecutor that, oh they can't, they can't, the defense can't argue that we did this poorly. Was there? There was not but but the jury instruction told the jury they're not obligated to do that and your focus should be on the evidence presented and so I guess now we're too late to flee anyway. Natasha could you find out anything? Not real. Not real. We might suggest they not do it while the court's in session in the future, which is 99% of the time. Okay. Sorry, continue. Yeah, let me, so the argument about credibility was made and there were jury instructions but I think that this is highlights, this, you just want me to talk over it? No, stop the clock. Did you find out anything? Yeah. She has better connections than we do. Not to interrupt your train of thought or anything. We'll give you some extra time to make up for this. It's, it's not just taking your time but we all lose our trains of thought. What can you tell us? Oh, city and county. Would it help if we issued an order of some sort? Too late. Probably not. Okay, would you add a minute to it? Make it five minutes. Thank you, Your Honor. So, this is part of what I think the problem is with what happened within the court's case laws. Cota Mesa said, well what matters is that the jury's not prevented from assessing this missing evidence or the investigative deficiencies. And this instruction in Cota Mesa goes on, like I talked about, with that qualifying language. And then the unpublished decision in Lemon says, well, Cota Mesa adopted this three-part test, but we're going to rely on these other instructions to fix the problem. But that's not what Cota Mesa said. Cota Mesa said the key language is this additional qualifying language because it's in the context of they don't have to do this. Right? And so we want to remind you that even though they don't have to do it, you're allowed to take into account what's missing when you evaluate whether they've met their burden of proof. Well, the way that usually works is the first opinion says, there's no problem here because the only challenge to the instruction we can think of is taken care of in the instruction itself. So that's okay. It's not saying that it had to be done that way. And then the unpublished opinions are saying, essentially, that it doesn't have to be in the same instruction. There could be other instructions saying that. What's wrong, if that's the reasoning, what's wrong with that reasoning? Because it's in the context of that instruction. There's nothing anywhere else in the instructions that says you jury can take into account the missing evidence. You jury can take into account the investigative deficiencies. All they're told that's specific to investigative deficiencies is the government doesn't have to do it. And what your focus should be on is the evidence presented. And so I think the combination of those instructions suggests to a jury, and you could easily imagine a discussion in the jury room. Look, government introduced evidence of eddings in the passenger seat coming out of the stairwell. And the other juror says, well, where's the photo of him holding the rifle? Well, we're not allowed to take that into account because the instruction tells us that the government is not obligated to pursue that investigative technique. That's the fundamental problem with what happened here. Well, it's a very interesting argument, and I missed it in the brief. And it's a nice point, but I'm having a little trouble seeing how it would really have affected the jurors, that they would think that they should ignore your argument that the cops who took pictures should have taken the picture at the critical moment, which would have proved or disproved their case. Well, I think the key point is that every court, besides the unpublished decisions of the Tenth Circuit, so not the published, every court besides the unpublished decisions of the Tenth Circuit have emphasized the qualifying language in an investigative techniques instruction. Is that qualifying language is necessary in the instruction? Is that right? That's right. That's right. But it's a problem that needs fixing, Your Honor. And if there are no other questions at this time, I'll reserve the remainder of my time. So you can report to us on that. Yes, thank you. Thank you. Ms. Walters. Good morning. May it please the court, Tiffany Walters for the United States. I'm hoping my argument will be slightly less eventful than the counsel's. The district court did not err here by giving a legally correct investigative instruction that this court has previously approved. Specifically going to the discussion we were just having. Have we previously approved this instruction in a published decision, meaning without the qualifying language in CODA? Yes. Trent doesn't list out the language of the instruction, but if you pull the briefs, you can see that they're talking about the exact identical instruction. So this court has approved of it in a published decision. Did it address this particular issue? It did not address this specific issue. This argument was not made, in fact. Correct. Correct. But it did approve of it, and it did use that same language from CODA MESA saying that it didn't preclude the jury from considering this evidence. So I don't think that that has so much sway. And I also think that CODA MESA, the instruction used there, didn't include some of the information that is, in fact, included in this instruction. And that's that last sentence. And that sentence, I'd like to read the whole thing, because I think it's not just about the evidence presented. But the question is whether the evidence presented is sufficient to convince you beyond a reasonable doubt of the defendant's guilt. And this language is sufficient that any reasonable jury would have understood that if the evidence presented is not sufficient, then the jury must acquit. And this is essentially the argument that was raised in Petty regarding the reasonable doubt instruction. And the reasonable doubt instruction has similar language to this. And the court said that that was sufficient to instruct the jury that it could consider the absence of evidence. So I don't think that this language is misleading in any way. Well, what was the number of the instruction we're talking about? Instruction number 13. It's on page 351 of the fourth volume of the record. OK. So in this instruction, Miss Stratton talks a lot about what it told the jury. But when we actually look at the language of the instruction, it's quite a modest instruction. So it says that you've heard testimony as to the manner in which the government conducted its investigation in this case, including investigative methods that were used and those that were not used. In attempting to prove its case, the government is under no obligation to use all of the investigative methods that are available to it or to use any particular method. Don't you think that sentence is misleading, confusing to the jury when there was no challenge to the failure to use any particular method? I think I would quibble with defendants setting it up as there being no challenge to the absence of a particular investigative method. And I'd like to explain that further. So when we're talking about the moment in which Eddings repositions the rifle in the car, which is the evidence that we're most concerned about, Sergeant Antizola testifies that he's using an investigative technique at that point. And that investigative technique is observation. He's watching through his binoculars, and he sees this happen. And he admits in cross-examination that he did not use the technique at that moment of photographing it. He did not use the technique of videoing it. So while, yes, other photographs and a video were introduced, with regards to photographic and video evidence, we're not talking about a binary test like DNA or photographs or fingerprints. Either you did do the DNA test or you didn't. With photographs, did you use the investigative technique if you took any photograph at any point in the case? What if you used a photograph for one element but not another? What if you used a video camera, but the resolution or perspective wasn't sufficient to capture it? I mean, specifically with the video camera, this court may well have already taken a look at the footage. But if you look at it, there's really no exculpatory inference to be gained from that. I mean, when you look at it, the quality and the perspective are such that there's no way in which that video would have ever shown what was happening inside that car. And so I think the defense was very focused throughout trial on what the government didn't do. And any reasonable juror would have understood, after hearing cross-examination, that that's what this instruction was talking about. These photographs and videos that the government didn't take of the moment of Eddings repositioning the rifle. I'd like to also point to the arguments that the defense did make. And I think the defense really focused on what's fundamentally a legally incorrect argument at trial, which is that testimonial evidence is not sufficient, and the government had an obligation to prove its case through photos and videos. And that's present throughout the cross-examination, and it became crystallized in the closing argument, where the defense counsel referred to, which is different than the appellate counsel here, but he referred to Sargent and DeZolla's testimony as just a talking head, and said that the government presented no evidence, because it didn't present photos or videos. And that's exactly the sort of improper inference that this instruction is designed to counter. I'm not sure. I mean, this instruction has to do with investigative techniques, not whether you can use testimonial evidence instead of evidence of testimonial techniques. It's a little confusing, because when you look at the first sentence, it's talking about investigative techniques. But then you look to the second sentence, and it starts, the government is under no obligation to use all of the investigative methods that are available to it, or use any particular method. So I think that starts to get into how the government's proving its case at trial. They're not talking about investigative methods. They're not talking about offering testimony versus finger graphs or fingerprints or DNA. Well, it's not identifying specific techniques, and I think that might, if we were to do that. Testimony isn't an investigative technique. Testimony isn't, but observation is. Observation through binoculars is. And if someone's doing that, if they have the binoculars up, they're not going to be able to take a video or take a photograph. That's a choice between techniques. And the government made that choice in this case. And because of that, the evidence that was produced from that technique is the eyewitness testimony. And that has value. And to say that that just isn't evidence at all is legally incorrect. Ultimately, this instruction focused the jury on what it needed to do, and that was to look at the evidence in front of it and determine whether it was sufficient to show the defendant's guilt beyond a reasonable doubt. And there's nothing misleading about that. What the defendant's arguing is that the crux to their argument is that you picked an investigative technique and there's a gap in that technique of the critical moment, so to speak, or the possession charge. That seems, I mean, if you tell the jury they can't consider the absence of evidence, doesn't it undermine the defense's main argument here? I think I would focus on whether or not the instruction told the jury that it can't consider the absence of evidence. And I don't think that's what the instruction did. I think by focusing the jury on what was presented, if sufficient evidence wasn't presented, then the jury has to quit. And so I think that's necessarily part of that piece, is that missing evidence may mean that the government can't meet its burden, but just because the government doesn't present a specific type of evidence is not in and of itself the end of the story. If you don't have a photograph, then you can't prove your case. That is not legally correct. Could I get you to address the preservation issue? Yes. So I think it's best understood defendant's argument in two pieces. Turning to the sort of combo argument that the investigative techniques instruction combined with a reasonable doubt instruction, that that is somehow misleading. There is absolutely no discussion in the record on the reasonable doubt instruction whatsoever, in terms of objections to the jury instructions, and that argument was clearly not raised below. So I think that one certainly was not preserved. As to the other piece, which is the idea that this instruction doesn't apply where an investigative technique is used, but it produces no incriminating evidence, the defendant argued below that this impeded his defense, and that he wasn't able to attack the credibility of the officer. And that's part of his argument on appeal, but this argument that the evidence was presented, and because of that, the investigative techniques instruction was not appropriate, was not presented anywhere below, and I'm not sure that the defendants even argued for plain error review in the reply brief on that. So we would argue that that is waived. Now to the extent the court does decide that plain error review is appropriate in this case, I'd also like to point out that in plain error review, the court has to consider whether the error was plain or obvious, and here we have no court case adopting defendant's position on this. And for that reason alone, the defendant cannot meet his burden on either of the arguments, because no court has endorsed his position, much less this court or the Supreme Court. Thank you. Briefly, I'd like to touch on harmlessness. I think that is fully addressed in the briefs, but I just would like to point out in the reply brief that the defendant still not challenged the evidence on count two, which is the count that the defense essentially conceded during closing arguments that there was sufficient evidence of. So I think regardless of what the court finds on the jury instruction, there's no way to say that that had any impact on the conviction on count two. And then also just briefly, as to the argument on suppression raised for the first time in the reply brief, the United States would encourage the court not to consider that, because that's waived two times over, and it's an inherently factual argument on the community caretaking doctrine. There's no record to support this court's review on it in any event. There also seems to be an argument that you have to have physical contact in order to have possession. Would you agree with that? I would not agree with that, and I would point the court to the Johnson decision. And in that case, the court was sort of discussing the possibility that someone might have a gun in a holster, that somehow someone had helped them put it in the holster, and they had not actually touched it. And in that case, the court suggested that that would be sufficient physical contact. Here, we're not even sure whether there was physical contact or not. Sergeant Edisola testified that he repositioned the rifle, and part of the rifle was sticking out. So it's entirely factually possible that he did touch the rifle. But either way, touching a rifle just inside a bag is sufficient to exercise direct physical control. And are you relying on actual possession or constructive? I think the record supports both. I think the most logically coherent theory is actual possession, because he actually touched the rifle or the bag containing the rifle, and that's sort of the clearest example of when you have actual physical possession. But that same evidence supports that he had access and an intent to control the weapon, because he's actually manipulating it, moving it from one place to the other while he's cleaning out the car. So I think either way you look at it, the evidence is sufficient. If there are no further questions, the United States will rest on its briefs. Thank you, Your Honor. Thank you, Your Honors. Just two quick points. First, as to the oral objection, I certainly hope my citations in the opening brief are correct, but this is pages 319 to 321 of Volume 4, as well as page 351, where counsel walks through the objections to the jury instruction. The main point I wanted to make on rebuttal is that there is – I did not hear a meaningful response to the contention that offering an investigative techniques instruction in circumstances like these has ever been approved or authorized in any court across the country. And every case that has approved the instruction has involved the classic anti-CSI instruction circumstance, which is where's the DNA, where's the fingerprints, where's the ballistics? Not a challenge to the deficiencies in what was introduced using the investigative techniques the government introduced as part of its case in chief. And, again, it places a thumb on the scale in favor of the government to allow them to incriminate the defendant using those investigative techniques and then telling the jury that they're not obligated to pursue those techniques when defense counsel points out the deficiencies. If there are no questions, I'd ask the court to reverse. Thank you very much, counsel. Thank you. Case is submitted. Counsel are excused. We're now going to...